# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
May 23, 2024
Lyle W. Cayce
Clerk

No. 24-60230

MCR Oil Tools, L.L.C.,

*Petitioner*,

*versus*

United States Department of Transportation; Pete Buttigieg, *Secretary, U.S. Department of Transportation*; Pipeline and Hazardous Materials Safety Administration; William S. Schoonover, *in his official capacity as Associate Administrator of* Hazardous Materials Safety, Pipeline and Hazardous Materials Safety Administration,

*Respondents*.

_____

Petition for Review from an Order of the
Dept of Transportation, NTSB
Agency No. 49 CFR 171-80

_____

Before Jones, Higginson, and Ho, *Circuit Judges*.

Per Curiam:

Petitioner's motion for expedited consideration of the petition for review is GRANTED. This matter is expedited to the next available randomly designated regular oral argument panel.

The motions for stay pending review and for administrative stay should be decided by the argument panel and are accordingly CARRIED WITH THE CASE, consistent with our panel practice. *See*, *e.g.*, *Woodlands Pride, Inc. v. Paxton*, No. 23-20480 (5th Cir. Feb. 20, 2024) (order attached as appendix). We express no opinion on the disposition of those motions.

JAMES C. HO, *Circuit Judge*, concurring:

The dissent argues that the motions for a stay pending review and for a temporary administrative stay should be granted. And that is indeed an option available to the argument panel, as the court's order today makes clear—consistent with our panel practice. *See*, *e.g.*, *Woodlands Pride, Inc. v. Paxton*, No. 23-20480 (5th Cir. Feb. 20, 2024) (order attached as appendix).

In *Woodlands Pride*, I wrote separately to explain why our court should have granted a stay pending appeal in that matter. My reasoning was simple: Texas should be allowed to enforce its duly enacted laws designed to protect children from sexually explicit content.

The panel in *Woodlands Pride* concluded that that was an issue for the argument panel to decide in the first instance.

I see no reason why we should treat the movant in this case more favorably than the movant in *Woodlands Pride*. If anything, the issues presented in *Woodlands Pride* were much simpler as a matter of law—and far less fact intensive. And this case involves the commercial interests of a single Texas business and its customers—whereas *Woodlands Pride* involved the innocence of every child in Texas.

* * *

MCR Oil Tools, L.L.C., can rest assured that the expedited argument panel that will soon be assigned to this case will no doubt carefully consider the issues presented by this motions panel—just as in *Woodlands Pride*.

3

EDITH H. JONES, *Circuit Judge*, dissenting in part:

A small business filed this emergency motion for stay pending review of the agency decision that threatens to kneecap it. The motion should be granted. The agency here operates on the old German maxim that "whatever is not explicitly permitted is prohibited." Transportation of the Petitioner's product has been totally safe for three decades. But the agency now decrees that the Petitioner cannot ship it—at all—without undertaking significant product reconfiguration, followed by testing and certification. The required actions will be costly and time-consuming, with no certainty of ultimate success with the agency. In sum, if the agency's decision is upheld, the enterprise and many licensees whose work is connected with it will suffer irreparable injury.

The panel majority opts only to expedite the hearing to an oral argument calendar, but carries the stay motion with the case. In the meantime, the company's inability to fulfill over $2 million in current orders will be compounded as other orders are foregone. I respectfully dissent from the panel's denial of a stay and the embedded denial of a temporary administrative stay.

Petitioner MCR Oil Tools, LLC, has manufactured and delivered across the world a Radial Cutting Torch ("RCT") that is important to oil and gas production activities "downhole." The torch uses a patented thermite mixture to cut steel pipe safely and cleanly, facilitating repairs and continued production activities. MCR's CEO attests that the company has shipped its RCT over 35,000 times in thirty years without ever having experienced a safety incident in transport or in its intended use.

During this period, the company passed multiple audits conducted by the Pipeline and Hazardous Materials Safety Administration ("PHMSA"), an agency within the Department of Transportation. The agency long

4

permitted transport of "traditional thermite formulations" like that of MCR without special approval. Sw. Rsch. Inst., Energetic Properties of Thermites 33 (Nov. 27, 2019).[1] As recently as February 2022, albeit pursuant to an "interim policy," MCR was authorized by the agency to ship its thermite as a Division 4.1 flammable solid, pursuant to the Hazardous Materials Regulations, 49 C.F.R. §§ 171.1-180.605. Robertson Declaration, Ex. D at 1. As a consequence, MCR's thermite-containing product could be shipped within (as pertinent here) "metal receptacles" without further PHMSA approval. 49 C.F.R. § 173.212(b).

Beginning in June 2023, however, the agency reached an opposite conclusion regarding MCR's method for shipping thermite prepackaged in a fully disassembled RCT. Robertson Declaration Ex. F at 7. The agency now characterizes thermite, when inserted in steel components of the RCT, as a "new explosive" that cannot be transported—at all—until it has undergone testing by an agency-approved entity and been certified by the agency. *See* 49 C.F.R. § 173.56(a), (b).

A stay pending appeal is warranted only if the movant satisfies the four criteria stated by the Supreme Court. *See Nken v. Holder*, 556 U.S. 418 (2009). The most important are likelihood of success on the merits and irreparable harm. I believe those criteria are fulfilled here.

1. MCR is likely to succeed on appeal. Stripped to essentials, MCR's contention is that this PHMSA determination is arbitrary and capricious for several reasons. *First*, MCR argues that the configuration of thermite within

---

[1] https://www.phmsa.dot.gov/sites/phmsa.dot.gov/files/2020-03/Energetic-Properties-of-Thermites.pdf. Thermite formulations are mixtures of two powders that, once ignited, produce a brief "burst of heat, high temperature, and molten metal." *Id.* Thermite is commonly used in numerous applications like specialty welding and is even a subject of home experiments described and captured on video for the internet.

5

steel parts of a disassembled RCT is not a "change in the formulation, design or process so as to alter any of the properties of the explosive," as the regulations define a "new explosive." 49 C.F.R. § 173.56(a). I agree. Read in context of the regulations as a whole, this definition does not encompass MCR's time-tested method of shipment, in which the disassembled components cannot function as an RCT and are indistinguishable from transportation "receptacles." Therefore, no new testing/certification or changes in manufacture and design of the RCT was legally required.

*Second*, MCR asserts various studies that went unaddressed by the PHMSA when it reached its new decision. It is arbitrary and capricious for an agency to "ignore evidence that undercuts its judgment." *Genuine Parts Co. v. Env't Prot. Agency*, 890 F.3d 304, 312 (D.C. Cir. 2018); *see also City of Kansas City v. Dep't of Hous. & Urb. Dev.*, 923 F.2d 188, 194 (D.C. Cir. 1991) ("Agency action based on a factual premise that is flatly contradicted by the agency's own record . . . cannot survive review under the arbitrary and capricious standard."). These studies, attached to MCR's motions before this court, are comprehensible even to non-scientific legal minds. The studies' photos of experiments, along with the reported results, showed clearly that the thermite as packaged in the disassembled components of an RCT does not pose the dangers that the PHMSA theorized. In fact, such packaging passed tests from the United Nations Manual of Tests and Criteria on which the PHMSA has relied. Yet the PHMSA now claims that one study was conducted by an "unauthorized" facility, the Southwest Research Institute, even though the Southwest Research Institute was the agency's own contractor to study thermite.

*Last*, the PHMSA conjures up a generalized fear of the greater risk of explosion posed by "confinement" of the thermite. Refusing to reference MCR's product studies, which disproved the agency's theory, is bad enough. But the PHMSA here contradicts its own study, which found that

although some "[e]xplosives react with greater violence under confinement as the burn rate is a function of pressure," "confinement does *not* appear to increase the burn rate of thermites; rather, [confinement] appears to *contain and suppress* the explosion." Safety Mgmt. Servs., Thermite Research Report 11 (Sept. 28, 2023) (emphasis added).[2]

2. MCR will suffer irreparable harm in the absence of a stay. The company's existence is credibly put at risk by the PHMSA's action. Its "flagship product," the Radial Cutting Torch, constitutes over 75% of annual sales (about $20 million) and the remainder of its sales are associated products. Robertson Declaration at 3. The agency order has forced it to sideline from delivery over $1 million in completed, packaged orders, and forego or forestall over a million more in sales during this litigation. The company suffers credible reputational injury from being unable to fulfill orders and from the charge of unsafe practices. Its relationships with licensees who install and service the RCT are also being damaged.

That these injuries are irreparable is confirmed by our decision in *Wages & White Lion Investments, LLC v. Food & Drug Administration*, 16 F.4th 1130 (5th Cir. 2021). *First*, the "existential" threat posed by the agency decision arises from the perilous position in which MCR has been placed. *Second*, in any suit against the government, the plaintiff's "costs are likely unrecoverable," in part due to sovereign immunity. *Id.* at 1142. But here, MCR is expending thousands each day that this continues (with little income coming in) while attempting to perform the manufacturing acrobatics that may change its product and shipping configuration sufficiently to appease the

---

[2] https://www.phmsa.dot.gov/sites/phmsa.dot.gov/files/2024-04/Thermite-Research-Report-DOT-Contract-693JK320C000005-Sept-28-2023.pdf.

PHMSA. This effort, too, will be unrecoverable in the event MCR succeeds in this court.

3. As *Nken* held, the other stay factors "merge when the government is the opposing party." 556 U.S. at 435. The public interest is not disserved by allowing MCR to continue to ship the disassembled RCT as it has been doing. It is hard to beat a clean thirty-year track record of transportation safety. The balance of hardships plainly favors MCR in its "existential" dispute. Finally, this court has repeatedly stated that "[t]here is generally no public interest in the perpetuation of unlawful agency action." *Texas v. Biden,* 10 F.4th 538, 560 (5th Cir. 2021).

With due respect to my colleagues on this panel, I trust that a panel to which this case is expedited will see the light.

United States Court of Appeals
for the Fifth Circuit

———————

No. 23-20480

———————

The Woodlands Pride, Incorporated; Abilene Pride Alliance; Extragrams, L.L.C.; 360 Queen Entertainment, L.L.C.; Brigitte Bandit,

*Plaintiffs—Appellees*,

*versus*

Warren Kenneth Paxton, *In an official capacity as Attorney General of Texas*,

*Defendant—Appellant.*

———————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:23-CV-2847

———————

UNPUBLISHED ORDER

Before Jones, Higginson, and Ho, *Circuit Judges*.
Per Curiam:

    IT IS ORDERED that Appellant-Texas Attorney General's opposed motion for a stay of the injunction pending appeal is CARRIED WITH THE CASE. This motion does not request either emergency relief or expedited consideration. The Texas Attorney General has instead sought multiple extensions of the deadline to file his opening brief. Accordingly, the

motion for stay pending appeal should be decided by the merits panel. We express no opinion on the disposition of that motion.

James C. Ho, *Circuit Judge*:

The State of Texas asserts a profound interest in shielding children from sexually oriented content. *See*, *e.g.*, *Ginsberg v. New York*, 390 U.S. 629, 639 (1968) ("The well-being of its children is of course a subject within the State's constitutional power to regulate," "justify[ing] . . . limitations . . . upon the availability of sex material to minors"); *FCC v. Pacifica Foundation*, 438 U.S. 726, 749 (1978) ("Bookstores and motion picture theaters . . . may be prohibited from making indecent material available to children."); *New York v. Ferber*, 458 U.S. 747, 757 (1982) ("we have sustained legislation aimed at protecting the physical and emotional well-being of youth even when the laws have operated in the sensitive area of constitutionally protected rights"); *Thompson v. Oklahoma*, 487 U.S. 815, 824 (1988) (in all "50 States," "no one under age 16 may purchase pornographic materials"); *see also Pope v. Illinois*, 481 U.S. 497, 516 n.11 (1987) (Stevens, J., dissenting) ("As for prohibiting sale or exhibition of sexually explicit material to minors . . . it has long been established that the State may go beyond the constitutional definition of obscenity."). This same interest in protecting the innocence of children is likewise reflected in other laws that shield minors from other adult activities. *See*, *e.g.*, 21 U.S.C. § 387f(d)(5) (tobacco); 23 U.S.C. § 158 (alcohol); Conn. Gen. Stat. § 12-576 (gambling).

Texas law defines sexually oriented content to include only that which appeals to the prurient interest in sex. Plaintiffs insist they do not offer such content—and not in the presence of children, in any event. If that is so, then they should have no quarrel with Texas law.

The motion for a stay pending appeal should be granted. Under the order issued today, the argument panel can do so.